IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NEXTEL WEST CORP. D/B/A
NEXTELCOMMUNICATIONS,

   Plaintiff,

vs.           No. **CIV 05-751 MCA/RLP**

TOWN OF EDGEWOOD,
NEW MEXICO, *et al.*,

   Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the following motions:  (1) *Nextel West Corporation d/b/a Nextel Communications' Motion for Partial Summary Judgment* [Doc. 30] filed on February 17, 2006; (2) *Defendants' Request for Eighteen-Day Extension of Time in Which to File Response to Motion for Summary Judgment* [Doc. 32] filed on March 8, 2006; (3) *Defendants' Motion to Certify Determinative State Law Questions to State Supreme Court* [Doc. 49] filed on April 13, 2006; (4) *Defendants' Motion for Partial Summary Judgment* [Doc. 50] filed on April 13, 2006; (5) Plaintiff's *Motion in Limine to Limit Testimony of Richard Comi and Exclude Documents Related to Selected Issues* [Doc. 51] filed on April 13, 2006; (6) Plaintiff's *Motion in Limine to Limit Testimony of Bruce P. Budagher and Exclude Documents Related to Issue of Gerald Coppler Misconduct* [Doc. 52] filed on April 13, 2006: (7) Plaintiff's *Motion for Extension of Time in Which to Respond to*

*Defendant's Motion for Summary Judgment* [Doc. 60] filed on May 1, 2006; (8) Plaintiff's *Daubert Motion Regarding Testimony of Richard Comi and Related Exhibits* [Doc. 69] filed on May 12, 2006; (9) Defendants' *Motion to Consolidated Case with Telecom Partners v. Town of Edgewood, et al. (D.N.M. Civ. 06-507 LAM/WPL)* [Doc. 83] filed on June 19, 2006; (10) *Defendants' Motion in Limine to Prohibit Evidence Relevant to the "Vested Rights" Claim Litigated in the Administrative Proceedings and Supported by Substantial Evidence* [Doc. 94] filed on August 25, 2006; (11) Plaintiff's *Unopposed Motion for Scheduling of Deadlines for Completion of Briefing of Defendants' Motion for Partial Summary Judgment* [Doc. 96] filed on August 25, 2006; (12) Plaintiff's *Motion in Limine to Prohibit Testimony Offered for the Purpose of Supplementing the Administrative Record* [Doc. 97] filed on August 29, 2006, and (13) the parties' *Joint Motion for Extension of Time to File Trial Briefs* [Doc. 101] filed on August 31, 2006.  Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court determines that Plaintiff is entitled to summary judgment on the claims asserted in Counts I, II, and III of the *First Amended Complaint*, and that Defendants are entitled to summary judgment on Counts IV and V of the *First Amended Complaint*.  Therefore, Plaintiff's motion for partial summary judgment (which only pertains to Counts I, II, and III) is granted, while Defendant's motion for summary judgment is granted in part with respect to Counts IV and V, and denied in part with respect to Counts I, II, and III.  The first two motions for extensions of time to complete briefing on the cross-motions for summary judgment are granted *nunc pro tunc*, and any responses received as of this date are accepted as timely filed.  All other remaining motions

2

are denied in light of the Court's ruling on the dispositive issues raised in the parties' cross-motions for summary judgment, and the trial scheduled for September 12, 2006, is vacated. The Court directs Plaintiff's counsel to meet and confer with Defendant's counsel and submit a proposed form of final order granting the relief requested in Counts I, II, and III of the *First Amended Complaint* by no later than September 13, 2006.

## I.    BACKGROUND

On July 8, 2005, Plaintiff Nextel West Corp. d/b/a Nextel Communications filed this civil action against Defendant Town of Edgewood, New Mexico, and a number of town officials.  The central allegation in Plaintiff's *Complaint* is that Defendants violated several provisions of the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), when they denied Plaintiff's application to install an array of antennas on an existing tower where two similar antenna arrays belonging to other personal wireless service providers are already installed.

Plaintiff filed a *First Amended Complaint* [Doc. 8] on September 2, 2005, which Defendants answered on September 19, 2005.  [Doc. 9.]   Thereafter, the Court issued an *Initial Pretrial Report* [Doc. 19] pursuant to Fed. R. Civ. P. 16 and D.N.M. LR-Civ. 16.1, which established a number of pretrial case-management deadlines and set a trial date of September 12, 2006.  Some of the individual town officials named as Defendants in the *First Amended Complaint* were dismissed by stipulation of the parties.  [Doc. 21, 26, 38.]  The parties then requested and received a number of extensions of the case-management deadlines set forth in the *Initial Pretrial Report*.  [Doc. 25, 27, 28, 29, 32, 60, 81, 84.]  In addition, Defendants moved to amend their *Answer* [Doc. 36] on March 13, 2006, and the

3

parties requested and received additional time to file various supplements and surreplies. [Doc. 54, 56, 57, 62, 65, 66, 67, 70, 71, 74, 77, 78, 79.]  The result is that briefing on Plaintiff's motion for partial summary judgment was not completed until August 10, 2006, approximately one month before the scheduled trial date.  [Doc. 92.]

This *Memorandum Opinion and Order* will not attempt to list every fact set forth in the somewhat convoluted record created by the parties' voluminous filings.[1]  A basic summary of events, however, can be culled from evidence of record as follows.

In March 2001, Telecom Partners, LLC sought and obtained a State  Building Permit from the State of New Mexico's Construction Industries Division for the construction of a latticework tower structure with a height of 185 feet on a plot of land adjoining Interstate 40 on the western side of the Town of Edgewood, New Mexico.  This plot of land is in a "C-B Commercial Zone" under the Town's 1999 zoning ordinance and adjoins Interstate 40, a four lane, divided interstate  highway.  [Ex. 3 to Doc. 30; Ex. 4 to Doc. 8, verbatim testimony at 56-57.]

The purpose of the Telecom Partners tower is to accommodate up to five arrays of telecommunications antennas, along with several microwave dishes.  This purpose is evident on the original plans for the tower dating from March 1, 2001, which show the antenna arrays and microwave dishes mounted on the tower.  [Ex. 6 to Doc. 30; Ex. 4 to Doc. 8,

---

[1]The Court also notes that the parties have chosen to litigate this matter through a series of piecemeal filings that often duplicate or overlap with one another.  Especially in a case that involves judicial review of an administrative record, such piecemeal filings are disfavored and do not contribute to the statutory goal of completing such review on an expedited basis.

verbatim testimony at 65-66, 75.]  The advantage of this design is that it allows several antenna arrays to co-locate on a single tower, thus avoiding the proliferation of additional smaller towers, each containing a single antenna array.  [Ex. 4 to Doc. 8, verbatim testimony at 52.]

Telecom Partners also sought and obtained approval of a Development Review Application for the tower from the Town of Edgewood's zoning officer in March 2001.  On the application form, the town's zoning officer noted a number of other approvals or permits that Telecom Partners might have to obtain from other agencies such as the Federal Aviation Administration (FAA).  [Ex. 3 to Doc. 30.]  Telecom Partners obtained the necessary approvals from other agencies before constructing the tower.  [Ex. 5B to Doc. 36.]

At the time of the tower's construction, the Town of Edgewood did not have a specific zoning ordinance pertaining to wireless telecommunications facilities.  Shortly after the approval of Telecom Partners' application, however, the town enacted a ninety-day moratorium on "the review and/or approval of any and all telecommunications tower development(s)" within its municipal boundary, "in order to allow for the review, and adoption of a municipal Telecommunications Tower Ordinance."  [Ex. 3A to Doc. 36.]  Because the town's zoning officer approved the Telecom Partners tower before this moratorium went into effect and before a new zoning ordinance was enacted, initial questions about its legality were answered by reference to the Town's 1999 zoning ordinance.

When Telecom Partners began construction of the tower in May 2001, the

construction was noticed by residents of the area, who hired a private attorney and made inquiries with town officials.  On or about May 16, 2001, a representative from the homeowners' association for the neighborhood near the tower site, Timothy R. Oden, submitted a letter from a private attorney, Anita P. Miller, contending that the town's 1999 zoning ordinance did "not authorize telecommunications towers as a permissive, conditional or special use in any Zone District," and that "an amendment to the Ordinance is necessary in order that such towers may locate in the Village." [Ex. 5A to Doc. 36.]  Ms. Miller's letter also noted, however, that she did "not have time to do a thorough review of the circumstances surrounding the issuance of the Building Permit, having only received the materials in the file on Monday, May 14th." [Ex. 5A to Doc. 36.]

In response to the letters from Ms. Miller and Mr. Oden, the town's mayor requested and obtained a legal opinion concerning the tower from another attorney, Gerald A. Coppler.[2]  Mr. Coppler's letter dated May 24, 2001, opines that the Telecom Partners tower is a "permissive use" under the 1999 zoning ordinance and that the town cannot retroactively withdraw its zoning approval for the tower because Telecom Partners' rights in the tower had already vested. [Ex. 5B to Doc. 36.]  A copy of Mr. Coppler's letter was forwarded to Mr. Oden, and the homeowner's association decided "not to pursue further action on the matter

---

[2]Defendants later uncovered evidence that Mr. Coppler simultaneously held attorney-client relationships with both the Town of Edgewood and the owner of the Telecom Partners tower during this time period, and that Mr. Coppler is listed as the organizer and registered agent for Telecom Partners on the company's articles of incorporation filed with New Mexico's Public Regulation Commission in January 2001. [Ex. 1, 3, to Doc. 36.]

because of the anticipated time, expense, and difficulty of obtaining" a favorable ruling. [Ex. 5 to Doc. 36.]

Construction of the Telecom Partners tower was completed in 2001. Antenna arrays belonging to two other personal wireless service providers (Alltel and T Mobile) were installed on the tower between 2001 and 2003, during which time the town's zoning ordinance had no specific permitting requirements for such equipment. [Ex. 4 to Doc. 8, verbatim testimony at 57-58; Ex. 4 to Doc. 41, at ¶ 10.]

In August 2003, the town's planning and zoning administrator, Karen Mahalick, issued a notice that the Telecom Partners property had become a "non-conforming structure" under a new zoning ordinance the town enacted in May 2003.[3] [Ex. 13 to Doc. 30; Ex. 4 to Doc. 8, verbatim testimony at 1.] The May 2003 zoning ordinance defines "nonconformity" as an existing lot, structure, or use of land or structures "which were lawful before this Ordinance was passed or amended, but which would be prohibited, regulated, or restricted under the terms of this Ordinance or subsequent amendment." [Ex. 14 to Doc. 30.] The May 2003 ordinance further provides that: "A nonconformity shall not be enlarged, expanded, or extended. However, the addition of a lawful use to any portion of a nonconforming building, which existed prior to the enactment of this Ordinance, shall not be deemed an extension of the nonconformity." [Ex. 14 to Doc. 30.]

---

[3]On the same date, Ms. Mahalick also issued a number of notices to Telecom Partners concerning issues unrelated to the tower itself, such as the need for a business license and further landscaping. [Ex. 10, 11, 12 to Doc. 30.] These issues were resolved before the current controversy over Plaintiff's application arose. [Ex. 4 to Doc. 8, verbatim testimony at 53.]

In December 2003, the town enacted another ordinance that, for the first time, specifically addressed the siting of "wireless telecommunications facilities." [Ex. 6 to Doc. 41.] The ordinance was drafted by a consultant, The Center for Municipal Solutions (CMS), under an arrangement whereby CMS would collect fees for reviewing applications submitted pursuant to the ordinance after its enactment. [Ex. 4 to Doc. 8, verbatim testimony at 23-24.]

The December 2003 ordinance generally requires a special use permit for new wireless telecommunications facilities, but Section 15(B) of this ordinance makes an exception for existing facilities:   "[a]ll Wireless Telecommunications Facilities existing on or before the effective date of this Ordinance shall be allowed to continue as they presently exist, provided however, that any visible modification of an existing Wireless Telecommunications Facility must comply with this Ordinance."   [Ex. 2 to Doc. 8, at 12.] Unlike the nonconformity language in the May 2003 ordinance, neither Section 15(B) of the December 2003 ordinance nor the definition of "Wireless Telecommunications Facilities" contained in Section 4(24) of the latter ordinance contain any limiting language requiring existing facilities to be "lawful" in order to qualify for this exception.  Instead, the exception categorically applies to *all* existing facilities.

Insofar as Plaintiff's proposed antenna array constitutes a "visible modification" of an existing facility under the December 2003 ordinance, the town required Plaintiff to apply for a special use permit from the town council for this antenna array.  In accordance with the procedure set forth in this ordinance, Plaintiff submitted an application to install its antenna array on the Telecom Partners tower on July 6, 2004.  [Ex. 1 to Doc. 30.]

If approved, Plaintiff's would be the third antenna array installed on the tower.  No structural modification to the existing tower is necessary in order to accommodate a third antenna array, and the overall height of the tower would not change.  Thus, co-locating Plaintiff's antenna array on the Telecom Partners tower would accord with the priorities set forth in the town's December 2003 ordinance, which places the highest priority on co-locating such facilities "[o]n existing Towers or other structures without increasing the height of the tower or structure."  [Ex. 6 to Doc. 41.]

This point was noted in a letter dated July 21, 2004, from CMS to the town council, which stated that:  "We have reviewed all of the materials submitted by the applicant for the above referenced application and we find them to be complete and in compliance with the Town of Edgewood's Local Ordinance Regulating the Siting of Wireless Telecommunications Facilities."  [Ex. 16 to Doc. 30.]  The Town's planning and zoning commission also reviewed Plaintiff's application and recommended that the town council approve it.  [Ex. 20 to Doc. 30.]

When the application reached the town council in September 2004, however, the town council did not proceed to vote on the application.  Instead, the town council scheduled public hearings on Plaintiff's application, which began on October 20, 2004.  Although Section 16(B) of the December 2003 ordinance does not require public hearings on "an applications to co-locate on an existing tower or other structure," [Ex. 2 to Doc. 8] the transcript of the October 20, 2004, hearing indicates that there initially was some confusion as to whether Plaintiff's application was proceeding under the May 2003 ordinance or the

9

December 2003 ordinance, because there was "unnecessary overlap" between the two ordinances. [Ex. 3 to Doc. 8, at 3.] This confusion was resolved by the time of the October 20, 2004, meeting, when the town council decided to apply the December 2003 ordinance to Plaintiff's application, but nevertheless proceeded to conduct a public hearing on that application. [Ex. 3 to Doc. 8, at 2-3.]

The town council did not reach a decision on Plaintiff's application at the October 20, 2004, meeting, and instead decided to continue the hearing until April 20, 2005, in order to request and gather more information. [Ex. 3 to Doc. 8, at 34.] On the latter date, Ms. Mahalick stated on the record that Plaintiff "has submitted all the documentation required by council during the October 20th meeting, and at this point, the application is complete." [Ex. 4 to Doc. 8, verbatim testimony at 2, 8.] Ms. Mahalick also acknowledged that "the tower as it stands is a legal non-conforming use" that "has a right to exist." [Ex. 4 to Doc. 8, verbatim testimony at 5-6.] In addition, the town attorney acknowledged that: "the record shows that Nextel does have a need for additional coverage in this community. The record shows that the soil analysis and the structural [analysis] that was called for by the application process was done and checked out. And the record shows . . . the other propagation studies that Nextel provided in response to our request for additional information." [Ex. 4 to Doc. 8, verbatim testimony at 36-37.] As conditions for granting Plaintiff's permit application, Plaintiff also agreed to a requirement of performing and passing an additional safety inspection on the tower, and the tower owner agreed not to install any microwave dishes on the tower. [Ex. 4 to Doc. 8, verbatim testimony at 84, 88-89.]

At the conclusion of the April 20, 2005, meeting, a motion to approve Plaintiff's application with the above conditions failed on a vote of one town councilor in favor and three opposed.  The town council then approved a motion instructing the town attorney, David Henderson, to prepare a written decision of the town council denying the application. [Ex. 4 to Doc. 8, verbatim testimony at 88-92.]

The written findings of fact and conclusions of law prepared by the town attorney specifically state that Defendant's decision on Plaintiff's application is governed by the December 2003 ordinance.  This written decision also acknowledges that Telecom Partners has a vested right to keep the existing tower in place, but that neither Plaintiff nor Telecom Partners have a vested right to locate Plaintiff's antenna array on that tower.  Consequently, Defendants concluded that the requirement of obtaining a special use permit under the procedure set forth in the December 2003 ordinance applied to Plaintiff's application.  [Ex. 1 to Doc. 8, at ¶¶ 15, 16, 17.]

Defendants' written decision further finds that Plaintiff "has demonstrated a legitimate need for additional coverage in the local community, and it is undisputed that the . . . tower passed the required structural and soils analysis."   Nevertheless, Defendants found it objectionable that the Telecom Partners' tower does not meet the setback requirements stated in the December 2003 ordinance and is perceived by some members of the community as having a negative impact on residences in the surrounding neighborhood.  According to Defendants' written decision, allowing Plaintiff to co-locate an antenna array on the Telecom Partners tower would "exacerbate" these pre-existing concerns with the tower "by adding to

the load" of the tower and by "placing an additional visual, aesthetic, and economic intrusion onto an already intrusive structure."   The written decision also faults Plaintiff for not submitting additional studies of alternative sites after the April 20, 2005, meeting.  For all of these reasons, Defendants denied Plaintiff's application.  [Ex. 1 to Doc. 8, at ¶¶ 18-32.]

Although it was not one of the conditions stated in the motions on which the town council voted at the April 20, 2005, hearing, the written decision prepared by the town attorney after that hearing also directs the town's planning and zoning office to "undertake an investigation as to whether the existing carriers on the [Telecom Partners] Tower violated applicable zoning regulations at the time they added onto the . . . Tower and to take appropriate enforcement action based on the results of that investigation." [Ex. 1 to Doc. 8.] The record does not reflect that such investigation or enforcement action has resulted in the removal of any of the other antenna arrays on the Telecom Partners tower or the dismantling of the tower itself.  On the contrary, the existing tower and antenna arrays continue to operate during the pendency of Plaintiff's application and this litigation.

After Defendants issued their written decision, Plaintiff filed this civil action.  [Doc. 1.]  Plaintiff also sent a written request dated July 7, 2005, asking the town council to reconsider its decision.  Although the town council held a meeting with Plaintiff's counsel on August 17, 2005, in response to this request, the town council did not take further action on the application.  [Ex. 5 to Doc. 8.]   By the latter date, this litigation was already underway.

On March 13, 2006, Defendants moved to amend their *Answer* to include a challenge

12

to the legality of the Telecom Partners tower itself based on allegations that Mr. Coppler, the attorney who prepared an opinion letter concerning the tower after its approval in May 2001, had a conflict of interest because he also represented the tower's owner.   [Doc. 30.]   In addition, Telecom Partners has filed an action against Defendants seeking a declaratory judgment and damages for inverse condemnation, violation of civil rights, and denial of equal protection. See Telecom Partners, LLC v. Town of Edgewood, No. 06-507 LH/WPL (D.N.M. removed June 13, 2006).   Defendants have filed a counterclaim in that action seeking to declare the Telecom Partners tower illegal and have it dismantled.   See id. Defendants also have moved to consolidate that action with this one and to certify certain questions of state law underlying their objection to the tower to the Supreme Court of the State of New Mexico.   [Doc. 49, 83.]

Plaintiff opposes these motions [Doc. 61, 86] and has filed motions in limine [Doc. 51, 52, 69, 97] seeking to exclude certain evidence from consideration.   Plaintiff also has attempted to supplement the record with evidence concerning Defendants' treatment of other applicants following the enactment of the December 2003 ordinance.   [Doc. 87.]   Finally, Defendants recently filed a motion in limine seeking to restrict the evidence Plaintiff may present to this Court regarding certain issues.   [Doc. 94.]

## II.   ANALYSIS

The dispositive questions in this case are whether Defendants violated the Telecommunications Act, as alleged in Counts I, II, and III of the *First Amended Complaint*, by unreasonably discriminating against Plaintiff's application,  rendering a written decision

denying that application which is unsupported by substantial evidence in the written record, and regulating in an arbitrary and unreasonable manner that effectively prohibits the provision of Plaintiff's personal wireless services in the Town of Edgewood. I answer these questions in the affirmative based on my analysis of the parties' cross motions for summary judgment and my review of the written record concerning Plaintiff's application. I also determine, however, that Plaintiff cannot prevail on its claim that Defendants violated 47 U.S.C. § 332(c)(7)(B)(iv) or 47 U.S.C. § 253(a), as alleged in Counts IV and V of the *First Amended Complaint*. Accordingly, Plaintiffs are entitled to partial summary judgment on Counts I, II, and III of the *First Amended Complaint*, while Defendants are entitled to summary judgment on Counts IV and V. In light of my rulings on the parties' cross-motions for summary judgment, I find that it is not necessary or appropriate to certify a question of state law to the Supreme Court of the State of New Mexico, to consolidate this case with the Telecom Partners litigation (No. 06-507 LH/WPL), to exclude evidence as requested in the parties' motions in limine, or to grant extensions of time to brief issues which are no longer relevant or dispositive.

### A.    The Parties' Cross-Motions for Summary Judgment

On February 17, 2006, Plaintiff moved for summary judgment on Counts I, II, and III of its *First Amended Complaint*. [Doc. 30.] Defendants followed with a summary-judgment motion of their own on April 13, 2006. [Doc. 50.] The parties initially filed two motions for extensions of time to complete briefing on these cross motions. [Doc. 32, 60.] These motions for extensions of time are granted *nunc pro tunc*, and any responses received as of

14

this date are accepted as timely filed.

On August 25, 2006, Plaintiff filed a motion to schedule deadlines for the completion of briefing on Defendant's motion for summary judgment.  [Doc. 96.]  The proposed deadlines in Plaintiff's latest motion conflict with existing case-management deadlines, and it is not necessary to allow additional discovery or briefing on the new issues raised in Defendant's *Amended Answer* for the reasons stated in the following analysis of the parties' cross-motions for summary judgment.   Therefore, Plaintiff's motion to schedule new deadlines at this late juncture is denied, and I proceed to analyze the merits of the parties' cross-motions.

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted to the Court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  A fact is "material" if it might affect the outcome of the case.  See id. at 248.

In ruling on a motion for summary judgment, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings.  Rather, the court assumes the admissible evidence of the non-moving party to be true, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52

15

(1999).

This standard of review may be modified to some degree insofar as a civil action under the Telecommunications Act calls for judicial review of an administrative record as opposed to a trial *de novo* with respect to certain issues, such as whether Defendants' written decision is supported by substantial evidence.  See United States Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, 340 F.3d 1122, 1133 (10th Cir. 2003); U.S. Cellular Corp. v. Bd. of Adjustment of the City of Seminole, No. 02-7124, 2006 WL 1288596, at *2 (10th Cir. May 11, 2006) (unpublished disposition collecting cases from other circuits).  The extent to which such modifications are required will become apparent in the Court's subsequent discussion of the merits of Plaintiff's claims under this statute.

The relevant part of the Telecommunications Act of 1996 provides that:

(7) Preservation of local zoning authority

(A) General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

(B) Limitations

 (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--
 (I) shall not unreasonably discriminate among providers of functionally equivalent services;  and
 (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.
 (ii) A State or local government or instrumentality thereof shall act on any

16

request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction.  The court shall hear and decide such action on an expedited basis.  Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

(C) Definitions

For purposes of this paragraph--

(i) the term "personal wireless services" means commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services;

(ii) the term "personal wireless service facilities" means facilities for the provision of personal wireless services;  and

(iii) the term "unlicensed wireless service" means the offering of telecommunications services using duly authorized devices which do not require individual licenses, but does not mean the provision of direct-to-home satellite services (as defined in section 303(v) of this title).

47 U.S.C. § 332(c)(7).

The Tenth Circuit has concluded that this statute "places six restrictions on the authority of state and local governments to regulate the placement, construction, and

17

modification of personal wireless service facilities.   Three of these restrictions are procedural," and the other three are substantive.  <u>City of Broken Arrow</u>, 340 F.3d at 1132 (citing 47 U.S.C. § 332(c)(7)(B)).   In <u>City of Broken Arrow</u>, the Tenth Circuit only addressed one of the statute's procedural requirements, namely whether a municipality's denials of permits to construct new cellular transmission towers were supported by substantial evidence.  <u>See</u> <u>id.</u> at 1133.

The present case is both factually and legally distinguishable from <u>City of Broken Arrow</u>.  It is factually distinguishable because here Plaintiff only seeks to install an antenna array on an existing tower, instead of constructing new towers.  The present case is legally distinguishable from <u>City of Broken Arrow</u> because Plaintiff alleges that Defendants have committed both procedural and substantive violations of the statute by denying Plaintiff's application to co-locate an antenna array on the Telecom Partners tower.  Thus, the Court must analyze the substantive requirements of the Telecommunications Act in addition to noting the requirements of local law.

The first of the statute's substantive restrictions prohibits Defendants from regulating in a manner that "unreasonably discriminate[s] among providers of functionally equivalent services." 47 U.S.C. § 332(c)(7)(B)(i)(I).  Courts have construed this provision of the statute as creating "a two-part test for determining if a zoning board has unreasonably discriminated. First, the plaintiff must show that the relevant providers are functionally equivalent.  Second, the plaintiff must show that the government body unreasonably discriminated." <u>Omnipoint Commc'ns Enters., L.P. v. Zoning Hearing Bd. of Easttown Twp.</u>, 331 F.3d 386, 395 (3d

Cir. 2003) (citing Nextel West Corp. v. Unity Twp., 282 F.3d 257, 266 (3d Cir. 2002)).  In this case, it is beyond dispute that the relevant providers are functionally equivalent; the disputed legal issue is whether Defendants "unreasonably discriminated" against Plaintiff by denying its application to co-locate an antenna array on an existing tower that already supports two antenna arrays belonging to other providers.

My analysis of this issue begins by noting that the statute only prohibits discrimination that is *unreasonable*.  Practically every exercise of state and local zoning authority involves some effort to discriminate between appropriate and inappropriate land uses, and the Telecommunications Act was not intended to serve as a blanket preemption of such authority.  See City of Broken Arrow, 340 F.3d at 1132; MetroPCS, Inc. v. City and County of San Francisco, 400 F.3d 715, 727 (9th Cir. 2005).

Nevertheless, the Telecommunications Act requires a reviewing court to carefully scrutinize the reasons for a state or local zoning authority's decision to discriminate among personal wireless service providers with respect to the location of similarly situated antenna arrays and related facilities.  Reviewing courts have determined that some grounds for discrimination are clearly permissible under the statute, while others are not.

For example, the statute does not permit state or local zoning authorities to reject an application to locate a personal wireless service facility based solely on the fact that "existing cellular service . . . is all that is necessary and that no further competition from Plaintiff, or presumably any other new entrant whose network would require a site . . . will be permitted.  This reasoning frustrates the primary purpose of the TCA 'to increase competition in the

telecommunications industry.'"  Sprint Spectrum L.P. v. Town of Easton, 982 F. Supp. 47,

51 (D. Mass. 1997) (quoting BellSouth Mobility, Inc. v. Gwinnett County, 944 F.Supp. 923,

927 (N.D. Ga. 1996)).  Expanding on this point, a Third Circuit opinion authored by Justice

Alito before he joined the Supreme Court in 2006 states that the purpose of the

Telecommunications Act's anti-discrimination provision is "to ensure that, once the

municipality allows the first wireless provider to enter, the municipality will not

unreasonably exclude subsequent providers who similarly wish to enter and create a

competitive market in telecommunications services."  Nextel West Corp., 282 F.3d at 264

n.6; accord Omnipoint Commc'ns Enters., L.P., 331 F.3d at 395.

Perhaps the most obvious example of such unreasonable discrimination occurred in

Nextel Partners, Inc. v. Town of Amherst, 251 F. Supp. 2d 1187, 1194-95 (W.D.N.Y. 2003),

where "Nextel . . . simply sought a special permit to collocate its antennae on an existing

tower that already has antennae from three different wireless services providers," and

"[a]pproximately one week prior to the filing of Nextel's application to collocate antennae

on the existing tower at 1210 New Road, the ZBA approved the special permit for

Voicestream to place similar antennae at a greater  height on the 1210 New Road existing

tower."  Id.  Noting that "[t]he record does not suggest . . . that the addition of Nextel's

antennae would have any significant impacts on the environment or the character of the

community, and certainly none that would distinguish Nextel's application from that of

VoiceStream," the court discerned "no plausible reason why the ZBA approved the

VoiceStream application and, approximately two months later, voted to deny a virtually

identical application from Nextel." Id. at 1195.

Unreasonable discrimination is not limited to cases where there is a difference in treatment among applications that seek to site identical facilities at the same location within two months of one another. "Such a standard would give localities far too much leeway in rejecting functionally similar requests by competing providers and would thwart the competition that the TCA sought to facilitate." MetroPCS, Inc., 400 F.3d at 728. Instead, the test is whether the unsuccessful applicant was "treated differently from other providers whose facilities are 'similarly situated' in terms of the 'structure, placement or cumulative impact' as the facilities in question." Id. (quoting APT Pittsburgh Ltd. P'ship v. Penn Twp. Butler County, 196 F.3d 469, 480 n. 8 (3d Cir.1999)).

Further, such differences in treatment must be based upon "differing visual, aesthetic or safety concerns, or . . . different zoning designations applicable to a proposed antenna site." Omnipoint Commc'ns, Inc. v. Common Council of the City of Peekskill, 202 F. Supp. 2d 210, 225 (S.D.N.Y. 2002). In articulating this requirement, courts often have cited or quoted the following excerpt from the House Conference Report that accompanied the enactment of the Telecommunications Act in 1996:

> The conferees also intend that the phrase "unreasonably discriminate among providers of functionally equivalent services" will provide localities with the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services. For example, the conferees do not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor's 50-foot tower in a residential district.

H.R. Conf. Rep. No. 104-458, at 208 (1996) (emphasis added), quoted with approval in MetroPCS, Inc., 400 F.3d at 727; see Omnipoint Commc'ns, Inc., 202 F. Supp. 2d at 225; Western PCS II Corp. v. Extraterritorial Zoning Auth. of the City and County of Santa Fe, 957 F. Supp. 1230, 1236-38 (D.N.M. 1997); Sprint Spectrum L.P., 982 F. Supp. at 51; Smart SMR of N.Y., Inc. v. Zoning Comm'n of the Town of Stratford, 995 F. Supp. 52, 59 (D. Conn. 1998).

These courts also have concluded that discrimination among personal wireless service providers is unreasonable when state or local zoning authorities have treated similarly situated providers differently based on factors other than those listed above. In Omnipoint Commc'ns, Inc., 202 F. Supp. 2d at 224-25, a local zoning authority gave preferential treatment to providers who sought to lease antenna sites from the municipality instead of private parties, and when Omnipoint applied to install an antenna array on a privately-owned apartment building, the zoning authority launched a detailed investigation of whether the board of directors of the apartment building was authorized by its residents to enter into a lease with Omnipoint. The court concluded that neither the preference for siting antennas on city-owned property nor the concern about whether building residents agreed with their board of directors' decision to lease space for an antenna array were "statutorily-recognized reason[s] for treating Omnipoint differently than other applicants." Id. at 225.

A similar conclusion was reached in Western PCS II Corp., 957 F. Supp. at 1236-38, where a court found unreasonable a local zoning authority's decision to discriminate based on "irrelevant issues of property law" rather than any documented visual, aesthetic, or safety

concerns.  Failure to focus on relevant differences with respect to "visual, aesthetic, or safety concerns" also provided the basis for finding unreasonable discrimination in Sprint Spectrum L.P., 982 F. Supp. at 51.

Finally, even when state or local zoning authorities properly focus on such concerns, sufficient evidence of meaningful differences in visual impact, aesthetics, safety, or zoning designations must be documented in a written record in order to survive judicial scrutiny. Thus, for example, it is not reasonable to cite visual or aesthetic concerns as a basis for a difference in treatment where the record contains no evidence of a meaningful change in the visual or aesthetic landscape because the application only involves the installation of an unobtrusive antenna array on a pre-existing tower.  See Smart SMR of N.Y., Inc., 995 F. Supp. at 59-60; Sprint Spectrum L.P., 982 F. Supp. at 51-52.

In this respect, the Telecommunications Act's substantive prohibitions overlap with its procedural requirements, under which "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 337(c)(7)(B)(iii).  "The requirement for a written denial was obviously included to permit a reviewing court to ascertain the rationale behind a denial so that it can determine if that denial comports with the [other] requirements of the statute." Western PCS II Corp., 957 F. Supp. at 1236.  "[L]ogic dictates that we look to the required writing to determine the basis for the City Council's decision," because "the purpose of section 337(c)(7)(B)(iii)'s 'writing' requirement is to facilitate meaningful judicial review."

City of Broken Arrow, 340 F.3d at 1135.

The requirement of a written decision based on substantial evidence contained in a written record also serves to preclude state and local zoning authorities from providing " 'the applicant with one reason for a denial and then, in court, seek[ing] to uphold its decision on different grounds.'" U.S. Cellular Corp., No. 02-7124, 2006 WL 1288596, at *2 (quoting National Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 21 (1st Cir. 2002)); accord Preferred Sites, LLC v. Troup County, 296 F.3d 1210, 1220 n.9 (11th Cir. 2002) ("Appellant may not rely on rationalizations constructed after the fact to support the denial of Appellee's application."); USOC of Greater Iowa, Inc. v. City of Bellevue, Nebraska, 279 F.Supp.2d 1080, 1087 (D.Neb.2003) (rejecting a post hoc rationale that an application was denied because it did not meet setback requirements when the record reflected that planning staff already knew of the setback requirement yet still recommended approval). Allowing a zoning authority to "hide the ball" in this manner is contrary to the "model of judicial review of administrative actions against which the Act was enacted." National Tower, LLC, 297 F.3d at 21. Under that model, judicial review of substantial-evidence claims must be confined to the administrative record.[4] See id. at 22. And the Court cannot affirm the denial of an application by supplying a reason for that denial which is not contained in the local zoning authority's own written decision. See generally id. at 21-22; see, e.g., id. at 24

---

[4]As will be noted below in the discussion of Plaintiff's motions in limine, I do not view this standard of judicial review as necessarily precluding the Court from considering evidence outside the administrative record to prove or disprove Plaintiff's discrimination and prohibition claims under the Telecommunications Act. See National Tower, LLC, 297 F.3d at 22.

(applying this rule to a prohibition claim under 47 U.S.C. § 332(c)(7)(B)(i)(II)).

Reliance on *post hoc* rationalizations in this context also undermines other procedural protections in the Telecommunications Act, which require the zoning authority to "act within 'a reasonable period of time,' and" which require "the reviewing court [to] hear and decide the action 'on an expedited basis.'" <u>Id.</u> (quoting 47 U.S.C. §§332(c)(7)(B)(ii), (v)). These requirements for expedited decision-making "indicate that Congress did not intend multiple rounds of decisions and litigation, in which a court rejects one reason and then gives the board the opportunity, if it chooses, to proffer another." <u>Id.</u> Allowing state or local zoning authorities to create a "moving target" by repeatedly shifting the grounds for their decision in this manner would make the Telecommunications Act more "susceptible to procedural thickets that ... make local parochialism impervious to challenge." Steven J. Eagle, <u>Wireless Telecommunications, Infrastructure Security, and the NIMBY Problem</u>, 54 Cath. U. L. Rev. 445, 445 (2005).

All of the authorities cited above support the conclusion that Defendants' denial of Plaintiff's application to co-locate an antenna array on the Telecom Partners tower in Edgewood, New Mexico, constitutes unreasonable discrimination in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I), and that the grounds for denying Plaintiff's application stated in Defendants' written decision are not supported by substantial evidence in the written record, as required by 47 U.S.C. § 332(c)(7)(B)(iii). As in <u>Nextel Partners, Inc.</u>, 251 F. Supp. 2d at 1194-95, and <u>Smart SMR of N.Y., Inc.</u>, 995 F. Supp. at 59-60, there is not substantial evidence in the record of any significant visual or aesthetic difference between Plaintiff's

proposed antenna array and those of other, similarly situated providers already located on the Telecom Partners tower.  Here Plaintiff only seeks to co-locate an additional antenna array on the existing tower without increasing its height.

As in Sprint Spectrum L.P., 982 F. Supp. at 51-52, and USOC of Greater Iowa, Inc., 279 F.Supp.2d at 1087, the written record does not provide substantial, specific evidence to support a finding that the addition of Plaintiff's antenna array would exacerbate any safety concerns associated with the setback requirements in Section 13 of the December 2003 ordinance, because all the relevant evidence indicates that the tower is designed to support the load occasioned by the addition of Plaintiff's proposed antenna array, and Plaintiff agreed to a requirement of performing and passing an additional safety inspection as a condition for granting the permit.  Moreover, Section 15(B) of the December 2003 ordinance plainly states that existing towers (such as the Telecom Partners tower) "are allowed to continue as they presently exist," notwithstanding the setback requirements that apply to new towers under Section 13 of the ordinance.  For these reasons, this case presents exactly the situation contemplated by Justice Alito in Nextel West Corp., 282 F.3d at 264 n.9, where "the municipality allows the first wireless provider to enter" and then "unreasonably exclude[s] subsequent providers who similarly wish to enter and create a competitive market in telecommunications services."  Omnipoint Commc'ns Enters., L.P., 331 F.3d at 395.

Defendants seek to distinguish their denial of Plaintiff's application from the authorities cited above by pointing out that Plaintiff was the first provider to apply for a permit to co-locate an antenna array on the Telecom Partners tower after the December 2003

ordinance went into effect.  To support their assertion that this difference in timing provides reasonable grounds for treating Plaintiff's proposed antenna array differently than the existing antenna arrays on the Telecom Partners tower, Defendants cite <u>Omnipoint Commc'ns Enters., L.P. v Warrington Twp.</u>, 63 F. Supp. 2d 658 (E.D. Pa. 1999).

<u>Warrington Twp.</u> is inapposite because it involved the requirement of "stealth technology" as a condition for approving construction of a new, 150-foot communications tower, not the denial of an application to co-locate an antenna array on an existing tower in accordance with the priorities stated in a newly enacted ordinance.  The district court's rationale for rejecting Omnipoint's claims in that case was that the other providers who were treated differently were not similarly situated, because they had applied to co-locate an antenna array on an existing tower or to replace an existing facility.  In contrast, Omnipoint sought construction of an entirely new tower which, under the plain language of the township's ordinance, was required to employ "stealth technology."  <u>See</u> <u>id.</u> at 661-62.

The present case involves an ordinance which plainly states that existing towers (such as the Telecom Partners tower) are "allowed to continue as they presently exist," and that applicants for special-use permits (such as Plaintiff) are required to locate their antenna arrays according to a scheme which places the highest priority on "existing Towers or other structures without increasing the height of the tower or structure."  [Ex. 2 to Doc. 8.] Further, there are two similarly situated providers that already have co-located functionally equivalent antenna arrays on the same tower.  Thus, rather than providing a basis for treating Plaintiff's proposed antenna array differently than those already on the tower, the enactment

27

of the December 2003 ordinance supports the addition of Plaintiff's proposed antenna array to this existing tower.

To be sure, the difference in timing between the installation of the two existing antenna arrays and Plaintiff's application accounts for the fact that the owners of the two existing antenna arrays were not required to go through the same procedural steps that Plaintiff took in order to comply with the December 2003 ordinance's permitting requirements. This difference in timing does not, however, provide reasonable grounds for the substantive result of that permitting procedure in Plaintiff's case, namely the denial of Plaintiff's application while the Telecom Partners tower remains standing and other providers continue to operate their antenna arrays on that tower. Nothing in the December 2003 ordinance changes the zoning designation of the site on which the tower is located: it remains a commercial zone adjoining a four-lane interstate highway.

As in Omnipoint Commc'ns, Inc., 202 F. Supp. 2d at 224-25, and Western PCS II Corp., 957 F. Supp. at 1236-38, the focus of Defendants' concerns is not on documented visual, aesthetic, or safety issues which distinguish Plaintiff's proposed antenna array from the other antenna arrays on the Telecom Partners tower. Instead, Defendants' focus is on the property rights of third parties over which Plaintiff has no control. This focus is evident in the transcript of the two public hearings on Plaintiff's application, where town councilors and others repeatedly inquired about the possibility of modifying or replacing the tower and the existing antenna arrays as a condition for granting Plaintiff's application, ignoring the fact that Plaintiff has no legal right to require the tower owner or the other providers using

28

the tower to modify their facilities, and Plaintiff does not seek such changes as part of its application.  [Ex. 3, 4 to Doc. 8.]

Similarly, the public comments received at the hearing with respect to adverse effects on residential property value were not focused on the addition of another antenna array on the existing tower.   Instead, these comments claimed that residential property value was affected by the appearance of the existing tower in the view from a residence and the possibility that microwave dishes might be installed on the tower.   [Ex. 4 to Doc. 8, verbatim testimony at 79-80.]  Such comments do not support a reasonable inference that Plaintiff can be held responsible for changes in property value that have already occurred as a result of the existing tower alone. The comments about microwave dishes also do not support such an inference, because Plaintiff is not applying for a permit to install a microwave dish, and the tower owner agreed at the hearing not to install microwave dishes on the tower if Plaintiff's application to install an antenna array was granted.  [Ex. 4 to Doc. 8, verbatim testimony at 88-89.]

Defendants' *Amended Answer* [Doc. 85] and *Motion for Summary Judgment* [Doc. 50] also evince an overriding concern with getting rid of the existing tower and avoiding microwave dishes by any means--instead of simply considering the merits of Plaintiff's application to co-locate an antenna array under the express terms of the December 2003 ordinance.   In these recent filings, Defendants seek to remove this litigation from the framework for judicial review set forth in the Telecommunications Act and begin an open-ended inquiry about the application of equitable principles under state law to determine the

29

property rights of a tower owner and other providers of personal wireless services that are not parties to this case.

Such zealous efforts to change the focus of this litigation constitute exactly the kind of *post hoc* rationalization that is prohibited under the Telecommunication Act's framework for judicial review.  This framework precludes Defendants from providing " 'the applicant with one reason for a denial and then, in court, seek[ing] to uphold its decision on different grounds.'"  U.S. Cellular Corp., No. 02-7124, 2006 WL 1288596, at *2 (quoting National Tower, LLC , 297 F.3d at 21); see Preferred Sites, LLC, 296 F.3d at 1220 n.9; USOC of Greater Iowa, Inc., 279 F. Supp. 2d at 1087.

Defendants' repeated efforts to shift the grounds for their decision-making--both during the application process and in this litigation--only serve to undermine the procedural protections of the Telecommunication Act, which require the zoning authority to "act within 'a reasonable period of time,' and" which require "the reviewing court [to] hear and decide the action 'on an expedited basis.'"  National Tower, LLC , 297 F.3d at 21 (quoting 47 U.S.C. §§332(c)(7)(B)(ii), (v)).  What Defendants are attempting to do here is to engage their adversaries in the unwinnable game of TEGWAR ("The Exciting Game Without Any Rules")[5] that is articulated in Judge Shadur's dissenting opinion in City of Broken Arrow, 340 F.3d at 1139-40.

Plaintiff has attempted in good faith to comply with the priorities set forth in the

---

[5]The TEGWAR analogy is drawn from the Mark Harris novel, Bang the Drum Slowly, and the motion picture based on that novel.  See City of Broken Arrow, 340 F.3d at 1139.

December 2003 ordinance by applying to co-locate its antenna array on an existing tower located in a commercial zone.  [Ex. to Doc. 8, at § 7(A).]  Defendant's response has been "too bad--you lose anyway," id., because approximately five years after the tower was built, eighteen months after Plaintiff's application was filed, and nine months after issuing their written decision denying that application, Defendants changed their minds again and decided they want to challenge the legality of the existing components of the tower under terms of the 1999 ordinance which no longer apply.

This *post hoc* decision makes no legal sense, because the legal landscape in existence at the time of the tower's construction in 2001 has since been altered by the May 2003 ordinance (under which the town previously determined that the tower was grandfathered as a "non-conforming structure"), the December 2003 ordinance (which categorically states that "[a]ll Wireless Telecommunications Facilities existing on or before the effective date of this Ordinance shall be allowed to continue as they presently exist"), and Defendant's own written decision on Plaintiff's application (which applies the December 2003 ordinance and states that "Telecom Partners obtained a vested right to the bare latticework tower structure upon approval of its development review application and construction of the . . . Tower in 2001").  [Ex. 13, 14 to Doc. 30; Ex. 2 to Doc. 8, at § 15(B); Ex. 1 to Doc. 8, at ¶ 15.]  Thus, voiding any permits issued under the 1999 zoning ordinance would have no effect on the existing tower, because the 1999 zoning ordinance itself was superseded or amended by the May 2003 ordinance, the December 2003 ordinance, and the subsequent actions Defendants and other town officials have taken pursuant to the latter ordinances.

While the Court in no way condones the apparent conflict of interest suggested by the evidence that Mr. Coppler was representing Telecom Partners at the same time that he wrote an opinion letter for the town in May 2001, the evidence of record does not support a reasonable inference that Mr. Coppler's opinion letter or the apparent conflict of interest entailed by his dual representation had a causal effect on the vesting of Telecom Partners' property rights in the tower after that date.   There is no evidence that Mr. Coppler was involved in approving the initial building permit or development review application for the tower.   Rather, his involvement occurred after the tower was approved and Mr. Oden (who has private interests of his own[6]) submitted a hastily prepared letter from a private attorney questioning its legality under the 1999 ordinance.   [Ex. 5A, 5B to Doc. 36.]   Further, there is no evidence that Mr. Coppler played any role in enacting the "nonconforming structure" provisions of the May 2003 ordinance, advising Telecom Partners that its tower was grandfathered as a "nonconforming structure" in August 2003, enacting the December 2003 ordinance which grandfathered "[a]ll Wireless Telecommunications Facilities existing on or before the effective date of this ordinance," or acting as the town attorney during the pendency of  Plaintiff's application to co-locate an antenna array on the Telecom Partners tower, when the applicability of the December 2003 ordinance and the vesting of Telecom Partners' rights in the tower were again confirmed.

---

[6]Mr. Oden admitted in his testimony before the town council on April 20, 2005, that one of the antenna arrays that subsequently moved to the Telecom Partners tower was previously located on his land, and that he had a lawsuit pending against T Mobile, the owner of that antenna array.  [Ex. 4 to Doc. 8, at 77.]

Nothing about Mr. Coppler's prior involvement with the town or with Telecom Partners prevented the town's subsequent attorney or other town officials from scrutinizing the validity of his opinion letter when the decision was made to attack the tower during the time that Plaintiff's application was pending before the town council. The opinions stated in Mr. Coppler's letter could have been scrutinized by a subsequent town attorney in a timely manner even if the letter's author did not have a conflict of interest or the subsequent attorney was unaware of that conflict. But now it is too late, because the Telecommunication Act's framework for judicial review does not permit Defendants to undertake such scrutiny for the first time after they issued their written decision denying Plaintiff's application and the litigation under this statute has commenced. See National Tower, LLC, 297 F.3d at 21.

In addition to their belated decision to revisit the circumstances under which the Telecom Partners tower was first constructed in 2001, Defendants also contradict themselves by claiming in their written decision that Plaintiff erred in requesting a definitive ruling on its application in lieu of submitting further studies of alternative sites after the April 20, 2005, hearing. [Ex. 1 to Doc. 8, at ¶ 25.] This position is inconsistent with prior representations made by town officials and their consultants before and during the hearings, which indicated that Plaintiff's application was complete. [Ex. 16 to Doc. 30; Ex. 4 to Doc. 8, verbatim testimony at 2, 8]. It is also inconsistent with the priorities of the December 2003 ordinance, which assign a higher priority to co-locating a single antenna array on an existing tower and discourage the proliferation of the numerous alternative sites that would otherwise be required to cover the same area within the town. [Ex. 2 to Doc. 8; Ex. 2 to

33

Doc. 30.]

Defendants' inconsistencies in handling Plaintiff's application are particularly relevant to Plaintiff's prohibition claim under 47 U.S.C. § 332(c)(7)(B)(i)(II). Accordingly, I next turn to the analysis of that claim.

A prohibition claim is more difficult for a district court to analyze than Plaintiff's other claims, because appellate courts have taken divergent approaches to interpreting this subsection of the Telecommunications Act. Lacking clear precedent from the Tenth Circuit, I approach Plaintiff's prohibition claim in a manner that borrows from the Ninth Circuit's recent analysis in MetroPCS, Inc., 400 F.3d at 731-33, and the principles articulated by the First Circuit in National Tower, LLC, 297 F.3d at 20. These authorities lead me to the conclusion that here Defendants have exercised their local zoning authority in such an arbitrary manner as to effectively prohibit the provision of Plaintiff's personal wireless services in violation of  47  U.S.C. § 337(c)(7)(B)(i)(II).

Other courts have recognized that such a prohibition may occur where "'further reasonable efforts [by the applicant] are so likely to be fruitless that it is a waste of time to even try.'"  National Tower, LLC, 297 F.3d at 20 (quoting Town of Amherst, N.H. v. Omnipoint Commc'ns Enters., 173 F.3d 9, 14 (1st Cir.1999)). "Setting out criteria under the zoning law that no one could ever meet is an example of an effective prohibition."  Id. at 23.

In the present case, it is unlikely that Plaintiff could ever satisfy the requirements imposed by the town because, on the one hand, the December 2003 ordinance sets forth one set of requirements, while on the other hand, the town imposes a different set of requirements

34

at its hearings on the application.  That further reasonable efforts by Plaintiff are likely to be fruitless is demonstrated by the following predicament.

Providers of personal wireless services have two basic options for extending their network of antennas through the town:  either they can locate new antennas on existing towers, or they can construct new towers on which to place such antennas.  Here the December 2003 ordinance provides Defendants with a basis to deny Plaintiff the second option, because Section 7(A) of that ordinance requires Plaintiff to locate its antenna array in accordance with a set of priorities which strongly favor co-locating "[o]n existing Towers or other structures without increasing the height of the tower or structure," and all existing towers are expressly permitted to continue their existence under Section 15(B) of the ordinance.  [Ex. 2 to Doc. 8.]   Thus, if Plaintiff attempted to pursue the alternative of proliferating several new towers throughout the town in lieu of applying for co-location on the existing Telecom Partners tower, then that alternative would not meet the written criteria stated in Defendants' December 2003 ordinance, and Defendants could deny Plaintiff's application on that basis.

If, on the other hand, Plaintiff applies to co-locate its antenna array on the existing Telecom Partners tower, then Defendants' actions in this case show that they will still deny the application based on neighboring residents' dissatisfaction with the existing tower.  Such dissatisfaction with the existing tower gives rise to a new set of *ad hoc* criteria manufactured by the town council at the hearings (and during the course of this litigation), which Defendants can in turn use as grounds for denying any applications that meet the written

criteria set forth in the December 2003 ordinance.  If Plaintiff applied to co-locate on another existing tower, these *ad hoc* criteria would allow the Defendants to deny that application on the same grounds stated here, namely the dissatisfaction of neighboring residents with any existing towers located within the town.  By establishing one set of criteria in the December 2003 zoning ordinance, and then manufacturing another set of *ad hoc* criteria at the hearings on Plaintiff's application (and during the course of this litigation), Defendants have produced a combination of criteria that no applicant can ever meet.

Even if the foregoing circumstances do not amount to a blanket ban on all personal wireless services within the town, Plaintiff still may succeed on its prohibition claim under 47 U.S.C. § 332(c)(7)(B)(i)(II) by showing that "local zoning decisions and ordinances ... [denying Plaintiff's application] prevent the closing of significant gaps in the availability of wireless services."  National Tower, LLC, 297 F.3d at 20 (collecting cases); MetroPCS, Inc., 400 F.3d at 731-33 (same).  The applicant also must show that

> the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve.   This will require a showing that a good faith effort has been made to identify and evaluate less intrusive alternatives, e.g., that the provider has considered less sensitive sites, alternative system designs, alternative tower designs, placement of antennae on existing structures, etc.

APT Pittsburgh Ltd. P'ship, 196 F.3d at 480; accord MetroPCS, Inc., 400 F.3d at 734.

Here Defendants' written decision acknowledges that "Nextel has demonstrated a legitimate need for additional coverage in the local community." [Ex. 1 to Doc. 8, at ¶ 18.] The record also reflects that Plaintiff has made a good-faith effort to study and identify a

number of alternatives for meeting this need.   [Ex. 2 to Doc. 30.]  Nevertheless, Defendants

still fault Plaintiff for not providing more studies even after receiving the analysis of their

own consultant and planning commission and spending an additional seven months to

complete two public hearings before the town council (which the December 2003 ordinance

does not require in the first place).  Under these circumstances, the only reasonable inference

to be drawn from the evidence of record is that Plaintiff has a gap in coverage in the Town

of Edgewood and that Defendant, through its arbitrary exercise of local zoning authority in

this case, is preventing Plaintiff from closing that gap in the manner that is least intrusive

according to the priorities stated in the December 2003 ordinance.  See Nextel Partners, Inc.,

251 F. Supp. 2d at 1196.

       For all of the above reasons, I conclude that Plaintiff is entitled to summary judgment

on the claims asserted in Counts I, II, and III of its *First Amended Complaint*, namely that

Defendants violated Section 704 of the Telecommunications Act by unreasonably

discriminating against Plaintiff's application, rendering a written decision denying that

application which is unsupported by substantial evidence in the written record, and

effectively prohibiting the provision of Plaintiff's personal wireless services.  Therefore,

Plaintiff's motion for partial summary judgment (which only pertains to Counts I, II, and III)

is granted, and Defendant's motion for summary judgment is denied in part as to these three

counts.

       I further determine that the appropriate remedy for Defendants' violations of the

Telecommunications Act is to order Defendants to grant Plaintiff a special use permit for its

proposed antenna array on the Telecom Partners tower, subject to the condition that the tower must pass an ANSI safety inspection as articulated in the transcript of the April 20, 2005, hearing.  A remand to the town council to consider other conditions or alternatives is not appropriate in light of Defendants' previous delays and inconsistencies in handling Plaintiff's application.  See National Tower, LLC, 297 F.3d at 24-25.  I will, however, require Plaintiff's counsel to meet and confer with Defendant's counsel before submitting a proposed final order granting the relief requested in Counts I, II, and III of the *First Amended Complaint*.

Because Plaintiff is entitled to such relief based on the violations asserted in Counts I, II, and III alone, and because 47 U.S.C. § 332(c)(7)(B)(v) requires this Court to reach a final decision on an expedited basis, I find it unnecessary to further prolong this litigation by conducting additional briefing or a trial concerning the remaining claims set forth in Counts IV and V of the *First Amended Complaint*.  Defendant moved for summary judgment as to these claims on April 13, 2006, and the Court held in abeyance Plaintiff's motion for an extension of time to respond [Doc. 60, 66] pending a ruling on Defendant's motion to amend its *Answer*.  [Doc. 36.]  Despite the fact that the Magistrate Judge issued a ruling on the motion to amend Defendant's *Answer* on June 13, 2006, [Doc. 80], and despite the numerous supplemental filings in this case, Plaintiff still has not filed a response explaining why Defendant's motion for summary judgment should not be granted as to  Counts IV and V.  These counts do not depend on the new issues raised in Defendant's *Amended Answer*, and thus Plaintiff has not shown good cause why additional time is needed to complete

briefing as to these counts.

The evidence of record supports the conclusion that Defendant is entitled to summary judgment on Counts IV and V, irrespective of any new evidence that might be submitted in reference to Mr. Coppler's involvement with the Telecom Partners tower in 2001. In order to show a violation of 42 U.S.C. § 332(c)(7)(B)(iv), as alleged in Count IV of the *First Amended Complaint*, Plaintiff must show that its application was denied "on the basis of environmental effects of radio frequency emissions [that] comply with the Commission's regulations concerning such emissions." In this case, Defendants' written decision does not refer to such emissions as the basis for their denial of Plaintiff's application, and the comments received at the hearings (which are part of the written record in this case) also do not suggest an impermissible focus on radio frequency emissions. Accordingly, Defendants are entitled to summary judgment on this count.

Count V of the *First Amended Complaint* relies on the preemptive language of 47 U.S.C. § 253(a). The meaning of 47 U.S.C. § 253(a), however, is tied to 47 U.S.C. §§ 253(b), (c), and (d), which support a private cause of action to preempt a state or local statute, ordinance, or regulation "only when that statute, ordinance, or regulation purports to address the management of the public rights-of-way, thereby potentially implicating subsection (c). All other challenges brought under § 253 must be addressed to the FCC." Bellsouth Telecommc'ns, Inc. v. Town of Palm Beach, 252 F.3d 1169, 1191 (11th Cir. 2001); see, e.g., Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1262 (10th Cir. 2004) (addressing claim that municipal right-of-way ordinance was preempted by 47 U.S.C. § 253).

39

In this civil action, Plaintiff's claims are not directed at the management of public rights-of-way, and thus the reliance on 47 U.S.C. § 253(a) is inapposite.  It follows that Defendants are entitled to summary judgment on Count V as well.

### B.   The Parties' Procedural and Evidentiary Motions

In addition to the motion for summary judgment discussed above, Defendants have filed a motion to certify certain state-law questions to the Supreme Court of the State of New Mexico [Doc. 49] and to consolidate this action with the Telecom Partners litigation (No. 06-507 LH/WPL) [Doc. 83].  Based on the authorities cited above, these motions are denied because they conflict with the framework for judicial review provided in the Telecommunications Act.  This framework requires a written decision from Defendants within a reasonable period of time and requires this Court to hear and decide Plaintiff's claims on an expedited basis without reliance on *post hoc* rationalizations such as those raised in Defendants' *Amended Answer* [Doc. 85], *Motion for Summary Judgment* [Doc. 50], and the Telecom Partners litigation (No.   06-507 LH/WPL).   See 47 U.S.C. §§ 332(c)(7)(B)(ii), (v); National Tower, LLC , 297 F.3d at 21.  Further, the question whether Defendants violated the Telecommunications Act by denying Plaintiff's application to co-locate an antenna array can be answered by reference to Defendants' written decision and the evidence of record in this case without expanding the Court's inquiry by consolidating or certifying questions of state law concerning the effect of Mr. Coppler's apparent conflict of interest on the legality of the Telecom Partners tower when it was approved and constructed in 2001, or questions relating to whether Telecom Partners is entitled to damages

for inverse condemnation or civil-rights violations occasioned by Defendants.  The latter questions, therefore, are not determinative.

In reaching this conclusion, the Court is not foreclosed from considering evidence outside the administrative record that the parties have submitted regarding Plaintiff's discrimination and prohibition claims under the Telecommunications Act.  My review of Plaintiff's substantial-evidence claim is confined to the administrative record; however, I have considered the additional evidence the parties have submitted on the discrimination and prohibition claims, without using this evidence to supply *post hoc* rationalizations for the denial of Plaintiff's application that are not contained in Defendants' written decision.  See National Tower, LLC, 297 F.3d at 21-22.

These principles apply to the parties' motions in limine, which seek to limit or exclude evidence relating to witnesses Richard Comi and Bruce Budagher, and the issue of Telecom Partners' vested rights in the tower.  [Doc. 51, 52, 69, 97.]  Because I have determined that Plaintiff is entitled to summary judgment on Counts I, II, and III of the *First Amended Complaint* notwithstanding the evidence which Plaintiff seeks to exclude, I conclude that Plaintiffs' motions in limine must be denied as moot.  And because my decision to grant summary judgment on these counts does not rely on a finding that Telecom Partners had a vested right to install Plaintiff's antenna array on the tower, Defendants' motion in limine also must be denied as moot.  I briefly explain why the evidence which is the subject of these motions does not affect my ruling on the merits.

First, Plaintiff objects to the admission of certain evidence relating to Mr. Comi.

41

Even if they are admitted or otherwise considered as part of the written record in this case, Mr. Comi's rambling and anecdotal narratives during the town council's hearings on Plaintiff's application do not support a reasonable inference that Defendants' written decision denying the application was supported by substantial evidence in the written record or that Defendants' did not unreasonably discriminate against Plaintiff or otherwise act in an arbitrary manner.

Anecdotal evidence that other towers have fallen down, for example, does not support a reasonable inference that the addition of Plaintiff's antenna array is likely to make the Telecom Partners tower fall down. Such an inference would require more specific information calling into question the structural and soils analysis presented with Plaintiff's application or identifying a common design defect shared by the facilities in question and another facility which is known to have collapsed unexpectedly. If Defendants were permitted to deny an application based solely on the fact that some other tower or antenna array somewhere in the grand universe of antennae has fallen down, then Defendants could use this fact to deny each and every application that came before them. The standard of review required under the Telecommunications Act does not allow for such sophistry.

Similarly, Plaintiff's objections to the evidence supplied by Bruce Budagher or others concerning Mr. Coppler's attorney-client relationship with Telecom Partners or his writing of an opinion letter for the town in May 2001 does not affect the outcome of the parties' cross-motions for summary judgment. Defendants' arguments with respect to this evidence consist of *post hoc* rationalizations for denying Plaintiff's application that are not contained

42

in their written decision.  And even if the evidence in question is admitted or otherwise considered as part of the written record for purposes of Plaintiff's discrimination or prohibition claims, it does not support a reasonable inference that Mr. Coppler's conduct in May 2001 had any causal effect on the vesting of Telecom Partners' property rights in the tower after that date.  Numerous intervening events, including the passage of the May 2003 ordinance, Ms. Mahalick's letter to Telecom Partners in August 2003, the passage of the December 2003 ordinance, the representations made at the hearing on Plaintiff's application, and Defendants' own written decision on that application, have substantially altered the legal landscape since the time of Mr. Coppler's letter, at least for purposes of the judicial review undertaken pursuant to the Telecommunications Act.[7]   Therefore, Plaintiff's motions in limine are denied as moot.

Finally, the evidence Defendants seek to exclude in their motion in limine is not necessary to my analysis of the parties' cross-motions for summary judgment, because that analysis assumes the correctness of Defendants' decision to require Plaintiff to apply for a special-use permit under the December 2003 ordinance.  Defendants' violations of the Telecommunications Act stem from their handling of that permit application, not from the simple requirement that Plaintiff apply for a permit.  Thus, it is unnecessary to decide whether Plaintiff and Telecom Partners could bypass the permitting requirements of the

---

[7]The Court's ruling does not, for example, preclude Defendants or others from alerting disciplinary authorities to Mr. Coppler's alleged misconduct or pursuing legal action against him, if permitted under the applicable statute of limitations.

December 2003 ordinance based on evidence that Telecom Partners had a vested right to install additional antenna arrays on the tower after the effective date of that ordinance.

As noted above, the Court's review of Plaintiff's substantial-evidence claim under 47 U.S.C. § 332(c)(7)(B)(iii) is confined to the administrative record.  See National Tower, LLC, 297 F.3d at 22.  This standard of review does not mean, however, that the findings and conclusions stated in Defendants' written decision are entitled to preclusive effect under principles of *res judicata* or collateral estoppel, as argued in Defendants' motion in limine.

The Full Faith and Credit Clause in Article VI of the United States Constitution, as implemented by 28 U.S.C. § 1738, generally requires that "federal courts give the same preclusive effect to a State's *judicial* proceedings as would the courts of the State rendering the judgment."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 222 (1985) (emphasis added).  But this rule does not necessarily apply to "judicially unreviewed findings of a state administrative agency."  Astoria Fed. Savings and Loan Ass'n v. Solimino, 501 U.S. 104, 106 (1991) (citing Univ. of Tenn. v. Elliott, 478 U.S. 788, 794 (1986)).  To determine whether to give preclusive effect to *judicially unreviewed* findings of a state administrative agency, federal courts generally look to "whether a common-law rule of preclusion would be consistent with Congress' intent in enacting" the statutory scheme which gave rise to the plaintiff's claims.  Elliott, 478 U.S. at 796; accord Solimino, 501 U.S. at 110.

Both the Supreme Court and the Tenth Circuit have acknowledged that "some federal statutory schemes" abrogate the federal common-law rule of preclusion.  Brockman v. Wyo. Dep't of Family Servs., 342 F.3d 1159, 1166 (10th Cir. 2003); see, e.g., Elliott, 478 U.S. at

795-96 (concluding that judicially unreviewed administrative findings do not have preclusive effect in civil actions under Title VII of the Civil Rights Act); <u>Solimino</u>, 501 U.S. at 112-13 (concluding that judicially unreviewed administrative findings do not have preclusive effect in civil actions under the Age Discrimination in Employment Act).  When the statutory scheme in question sets forth a specific standard by which the state administrative proceedings are to be reviewed by a federal tribunal, the Supreme Court has concluded that allowing common-law preclusion doctrines to apply to the results of such administrative proceedings "would make little sense."  <u>Elliott</u>, 478 U.S. at 795; <u>accord</u> <u>Solimino</u>, 501 U.S. at 111-12.

The provisions of the Telecommunications Act which Plaintiff has invoked in Counts I, II, and III of the *First Amended Complaint* provide specific standards which courts must apply when reviewing state and local zoning decisions for compliance with this federal statute.  Application of common-law preclusion doctrines would produce an absurd result in this context because if the administrative findings were to be given preclusive effect, then there would be nothing left for a court to review after the administrative proceedings concluded.  Therefore, Congress must have intended to abrogate common-law rules of preclusion when it enacted the provisions of the Telecommunication Act which allow for judicial review of state and local zoning decisions.  It follows that the findings and conclusions stated in Defendants' written decision do not have a preclusive effect on Plaintiff's claims in this litigation, and Defendants' motion in limine must be denied.

45

## III.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff is entitled to summary judgment on Counts I, II, and III of the *First Amended Complaint*, and Defendants are entitled to summary judgment on Counts IV and V.  The remaining procedural and evidentiary motions (except for the first two motions for extensions of time) are denied, and the trial scheduled for September 12, 2006, is vacated.  Plaintiff's counsel is directed to meet and confer with Defendants' counsel and submit a proposed final order granting the relief requested in Counts I, II, and III of the *First Amended Complaint* by no later than September 13, 2006.

**IT IS THEREFORE ORDERED** that *Nextel West Corporation d/b/a Nextel Communications' Motion for Partial Summary Judgment* [Doc. 30] concerning Counts I, II, and III of the *First Amended Complaint* is **GRANTED**.

**IT IS FURTHER ORDERED** that *Defendants' Request for Eighteen-Day Extension of Time in Which to File Response to Motion for Summary Judgment* [Doc. 32] is **GRANTED** *nunc pro tunc*, and Defendants' response [Doc. 41] is accepted as timely filed.

**IT IS FURTHER ORDERED** that *Defendants' Motion to Certify Determinative State Law Questions to State Supreme Court* [Doc. 49] is **DENIED**.

**IT IS FURTHER ORDERED** that *Defendants' Motion for Partial Summary Judgment* [Doc. 50] is **GRANTED IN PART** with respect to Counts IV and V of the *First Amended Complaint* and **DENIED IN PART** with respect to Counts I, II, and III.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion in Limine to Limit Testimony of Richard Comi and Exclude Documents Related to Selected Issues* [Doc. 51] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion in Limine to Limit Testimony of Bruce P. Budagher and Exclude Documents Related to Issue of Gerald Coppler Misconduct* [Doc. 52] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion for Extension of Time in Which to Respond to Defendant's Motion for Summary Judgment* [Doc. 60] is **GRANTED** *nunc pro tunc*, and any supplemental filings received as of this date are accepted as timely filed.

**IT IS FURTHER ORDERED** that Plaintiff's *Daubert Motion Regarding Testimony of Richard Comi and Related Exhibits* [Doc. 69] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendants' *Motion to Consolidated Case with Telecom Partners v. Town of Edgewood, et al. (D.N.M. Civ. 06-507 LAM/WPL)* [Doc. 83] is **DENIED**.

**IT IS FURTHER ORDERED** that *Defendants' Motion in Limine to Prohibit Evidence Relevant to the "Vested Rights" Claim Litigated in the Administrative Proceedings and Supported by Substantial Evidence* [Doc. 94] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's *Unopposed Motion for Scheduling of Deadlines for Completion of Briefing of Defendants' Motion for Partial Summary Judgment* [Doc. 96] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff's *Motion in Limine to Prohibit Testimony Offered for the Purpose of Supplementing the Administrative Record* [Doc. 97] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the parties' *Joint Motion for Extension of Time to File Trial Briefs* [Doc. 101] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the **CALL OF THE CALENDAR** set for WEDNESDAY, September 6, 2006, at 9:00 a.m., and the **JURY SELECTION/TRIAL** set for TUESDAY, September 12, 2006, at 9:00 a.m. are hereby **VACATED**.

**IT IS FURTHER ORDERED** that Plaintiff's counsel is directed to meet and confer with Defendants' counsel and submit a proposed final order granting the relief requested in Counts I, II, and III of the *First Amended Complaint* by no later than September 13, 2006.

**SO ORDERED** this 1st day of September, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge

48